**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4295-19

SURAIYA BEGUM,

 Plaintiff-Respondent,

v.

SENTHILKUMAR PALANISAMY
HEWITT, a/k/a SENTHIL
KUMAR PALANISAMY,

 Defendant-Appellant,

and

KATHRYN HEWITT,

 Defendant.

_____

 Submitted April 19, 2021 – Decided May 14, 2021

 Before Judges Currier and Gooden Brown.

 On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-0760-15.

 Senthilkumar Palanisamy Hewitt, appellant pro se.

Freidel & Kramer, PC, attorneys for respondent (Talbot
B. Kramer Jr., on the brief).

PER CURIAM

This appeal arises from ongoing litigation between defendant/father and plaintiff/mother concerning custody, care, parenting time, and related issues involving their minor daughter, Alexis,[1] who was born in the United States but allowed to relocate to Singapore with her mother, a Singapore citizen, pursuant to a consent order. Defendant, who was born in India, is a citizen and resident of the United States.

Among other things, the consent order, which was later memorialized in a series of amended judgments, gave both parties shared access to Alexis's education and medical records; allowed Alexis to travel to the United States with her mother to visit defendant, which travel was later hampered by a ten-year immigration ban on plaintiff re-entering the United States; retained jurisdiction over all issues related to Alexis in New Jersey courts; and authorized the domestication of the New Jersey order in Singapore, which later proved problematic in Singapore courts. A subsequent amendment entered following a

---

[1]  As the compelling interest of protecting the child's privacy outweighs the Judiciary's commitment to transparency in this matter, a fictitious first name is used for the minor child.

A-4295-19

plenary hearing added a provision permitting plaintiff to apply for Singapore citizenship for Alexis while Alexis maintained her United States citizenship in order for Alexis to qualify for the government benefits conferred on Singapore citizens, including medical, educational, and childcare subsidies.

In our recent unpublished decision, which we incorporate by reference, we detailed the facts and extensive motion practice in the case and affirmed the September 20, 2019 Family Part order denying defendant reconsideration of an earlier June 4, 2019 order addressing the above issues as well as others. Begum v. Hewitt, No. A-0562-19 (App. Div. Nov. 16, 2020), certif. denied, ___ N.J. ___ (2021). Specifically, we affirmed the judge's decision (1) allowing Alexis to obtain Singaporean citizenship without domesticating the New Jersey order, id., slip op. at 21; (2) imposing monetary sanctions on defendant including the payment of plaintiff's legal fees for failing to comply with various provisions of prior orders, id., slip op. at 22; (3) upholding plaintiff's designation as the parent of primary residence and restrictions on defendant traveling with Alexis outside of Singapore, ibid.; and (4) finding plaintiff in substantial compliance with requirements to provide defendant with Alexis's medical and school records, id., slip op. at 21-22.

A-4295-19

In this appeal, filed on July 30, 2020, while the prior appeal was pending, defendant reiterates his objections to the June 4 and September 20, 2019 orders, and challenges an additional enforcement order entered on June 19, 2020. Among other things, the June 19 order (1) authorized plaintiff to sign Singapore citizenship and school registration forms for Alexis on defendant's behalf; (2) entered judgment for the unpaid counsel fee award that was previously imposed; (3) awarded counsel fees for filing the enforcement motion; (4) granted continued shared access to Alexis's medical records; (5) denied sanctions on plaintiff due to her substantial compliance with the requirements of prior orders; (6) denied defendant's request to be listed as an emergency contact at Alexis's school given the geographic distance; and (7) denied a change of custody on the ground that there was no material change of circumstances.

Other than contesting the judge's decision awarding counsel fees for the enforcement motion and authorizing Alexis's school registration on defendant's behalf, there is nothing raised in the current appeal that was not fully adjudicated in our prior decision. Therefore, we hold that our prior decision is the law of the case and bars relitigation. See Lombardi v. Masso, 207 N.J. 517, 538-39 (2011) (explaining that the law-of-the-case doctrine "is a non-binding rule intended to 'prevent relitigation of a previously resolved issue'" and is "triggered

A-4295-19

when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue." (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008))); State v. K.P.S., 221 N.J. 266, 277 (2015) ("Both collateral estoppel and law of the case are guided by the 'fundamental legal principle . . . that once an issue has been fully and fairly litigated, it ordinarily is not subject to relitigation between the [same parties] either in the same or in subsequent litigation.'"  (quoting Morris Cnty. Fair Hous. Council v. Boonton Twp., 209 N.J. Super. 393, 444 n.16 (Law Div.1985))).   Consequently, we reject the arguments previously adjudicated in our prior decision and affirm the June 19, 2020 order substantially for the reasons stated by Judge Kurt Kramer in his oral opinion of the same date.

Succinctly, on April 23, 2020, plaintiff moved to enforce the June 4 and September 20, 2019 orders.  On May 5, 2020, defendant opposed the motion, requested a stay of the orders, and cross-moved for various relief.  Oral argument was conducted on June 19, 2020, during which plaintiff's attorney explained to the judge that because defendant did not seek a stay of the prior orders pending appeal, plaintiff was moving to enforce certain provisions of the orders pursuant to Rule 1:10-3.  In her supporting certification, plaintiff outlined the ongoing harms she suffered by virtue of defendant's failure to comply with the prior

A-4295-19

orders, particularly her inability to obtain Singaporean citizenship for Alexis with its attendant benefits.

Thus, plaintiff sought an order requiring defendant to sign the consent form for Alexis to obtain Singaporean citizenship, pay $10,000 in accrued sanctions for failing to sign the consent form, pay $3377[2] in counsel fees plus sanctions as previously awarded, and pay counsel fees incurred in filing the current enforcement motion as permitted under the September 20, 2019 reconsideration order.[3]  Plaintiff also sought an order compelling defendant to provide necessary documentation to enroll Alexis in public school in Singapore. In response, defendant sought a stay of the prior orders and requested sanctions against plaintiff based on the same claims he had been making throughout the multi-year litigation.

In an oral opinion, Judge Kramer found no disputed material facts, confirmed that defendant did not previously "move for a stay of any portion of the . . . prior order[s]," and determined that "the elements necessary for a stay [did] not exist" as to certain provisions.  As a result, the judge granted in part,

---

[2]  We round all monetary amounts to the nearest dollar.

[3]  That order alerted defendant that an award of counsel fees would be entertained if a further enforcement motion was needed to obtain defendant's compliance with the prior orders.

and denied in part, plaintiff's motion to enforce litigant's rights. Specifically, "based on the pending appeal," the judge denied plaintiff's "request for the . . . award of sanctions for [defendant's] failure to sign the [citizenship] consent form" "without prejudice" to plaintiff seeking enforcement of the provision after the adjudication of the appeal. However, the judge ordered that "[i]n the event . . . defendant does not sign the [form] within [sixty] days"[4] "of the date of th[e current] order," then "plaintiff shall be authorized" "to sign any citizenship forms" for Alexis "on behalf of . . . defendant." Likewise, the judge authorized plaintiff "to sign the forms necessary" for Alexis to be enrolled in public school on defendant's behalf after defendant represented to the court that he had signed the necessary documents for Alexis's enrollment.

The judge also granted "plaintiff's request for enforcement of the attorney fee award" previously entered and "reduced [the award] to a judgment" in the amount of $3377 "[p]lus sanctions of [$2000] consistent with [the] prior order." Additionally, after considering the certification of plaintiff's counsel and applying the Rule 4:42-9 and 5:3-5(c) factors,[5] the judge granted an award of

---

[4]   The judge initially imposed a forty-five-day deadline for defendant's compliance but extended the deadline to sixty days at defendant's request.

[5]  Under Rule 5:3-5(c),

counsel fees in the amount of $1850 for the current application. The judge explained that "this [was] an enforcement action" and "plaintiff has prevailed on the majority of the material issues."

Turning to defendant's cross-motion, the judge denied "defendant's request for sanctions," finding that defendant "failed to establish a material breach" of the requirements imposed on plaintiff in prior orders. Further, the judge denied defendant's request for a change of custody or a plenary hearing, noting that "[i]ssues of custody have been substantially litigated in the past" and "there has been no demonstrated material change of circumstances by . . . defendant" "that would be a basis for the [c]ourt to consider a change of custody."

---

In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to R. 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties . . . ; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

A-4295-19

Further, the judge directed both parties to "notify the other within [twenty-four] hours of scheduling any medical appointment" and provide "a copy of all medical records received" "within [twenty-four] hours after such appointment." Additionally, defendant was granted access to "any medical records available electronically" through Alexis's Singapore identification number, rather than plaintiff's. Also, defendant was to be identified as Alexis's father on "school records," "but shall not be identified as the emergency contact" because given Alexis's "location . . . in Singapore" and defendant's location in the United States, defendant was "not able to act in an emergency role if [plaintiff was] not available."[6] However, plaintiff was directed to "notify . . . defendant" "within [twenty-four] hours of any school emergency." The judge entered a memorializing order on June 19, 2020, and this appeal followed.

On appeal, defendant raises the following arguments for our consideration:

> I. PERMISSION SHOULD NOT HAVE BEEN GIVEN FOR PLAINTIFF TO SIGN THE CONSENT TO CITIZENSHIP FORM WITHOUT THE CONSENT ORDER BEING DOMESTICATED IN SINGAPORE.
>
> II. PLAINTIFF'S [CONTEMPT] OF COURT SHOULD BE UPHELD AND SHE SHOULD HAVE

---

[6] Plaintiff's mother and sister, with whom she and Alexis resided, were listed as emergency contacts at Alexis's school.

A-4295-19

SANCTIONS HELD AGAINST HER UNTIL SHE COMPLIES WITH CONSENT ORDER.

III. MATERIAL CHANGE OF CIRCUMSTANCES WARRANT A PLENARY HEARING TO DETERMINE A CHANGE IN CUSTODY.

IV. LEGAL FEES SHOULD NOT HAVE BEEN AWARDED TO PLAINTIFF.

V. COURT ABUSED ITS POWER TO DENY [DEFENDANT'S] RIGHTS AND ALLOW [PLAINTIFF TO] SIGN SCHOOL FORMS WITHOUT [DEFENDANT], WITHOUT ANY EVIDENCE AND REMOVED [DEFENDANT'S] EMERGENCY CONTACT ON [ALEXIS'S] SCHOOL RECORDS AND REGISTRATION.

Preliminarily, we address the trial court's jurisdiction to adjudicate the enforcement motion while an appeal was pending. Rule 2:9-1(a) provides in pertinent part:

Except as otherwise provided by [Rules] 2:9-3 [(stay pending review in criminal actions)], 2:9-4 (bail), 2:9-5 (stay pending appeal [in civil actions]), 2:9-7 [(stay of administrative proceedings)], 2:9-13(f) [(appeals from orders granting pretrial detention)], and 3:21-10(d) [(change of sentence during pendency of appeal)], the supervision and control of the proceedings on appeal or certification shall be in the appellate court from the time the appeal is taken or the notice of petition for certification filed. The trial court, however, shall have continuing jurisdiction to enforce judgments and orders pursuant to [Rule] 1:10 [(contempt of court and enforcement of litigant's rights)] and as otherwise provided.

10

Rule 1:10-3 provides that "[n]otwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action."  Further, "[t]he court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under th[e] rule" and "[i]n family actions, the court may also grant additional remedies as provided by [Rule] 5:3-7."  R. 1:10-3.

The motion to enforce litigant's rights described in Rule 1:10-3 is addressed to a court's "inherent right to invoke coercive measures designed to compel a recalcitrant party to comply with a court order."  S.S. v. E.S., 243 N.J. Super. 1, 8 (App. Div. 1990).  Thus, "[a] proceeding to enforce litigant's rights 'is essentially a civil proceeding to coerce the defendant into compliance with the court's order for the benefit of the private litigant.'"  Manalapan Realty, Ltd. P'ship v. Twp. Comm., 140 N.J. 366, 392 (1995) (quoting Essex Cnty Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)).

Under Rule 2:9-5(b),

> [a] motion for a stay in a civil action . . . prior to the date of the oral argument in the appellate court or of submission to the appellate court for consideration without argument shall be made first to the court which entered the judgment or order.  Thereafter the motion shall be made to the appellate court.

11

Applications for a stay pending appeal are governed by the familiar standard outlined in Crowe v. De Gioia, 90 N.J. 126 (1982). Under that standard, a party seeking a stay must demonstrate that (1) relief is needed "to prevent irreparable harm"; (2) the applicant's claim rests on settled law and has "a reasonable probability of ultimate success on the merits"; and (3) balancing "the relative hardship to the parties" reveals that greater harm would occur if a stay is not granted than if it were. Id. at 132-34. The moving party has the burden to prove each of the Crowe factors by clear and convincing evidence, Brown v. City of Paterson, 424 N.J. Super. 176, 183 (App.Div.2012) (citation omitted), and the court's decision will not be disturbed on appeal so long as it did not amount to an abuse of discretion. Crowe, 90 N.J. 133-35.

Here, the first appeal was submitted to the court on October 13, 2020, and defendant requested a stay of the orders on appeal in his cross-motion filed on May 5, 2020. We are satisfied there was no abuse of discretion by Judge Kramer in denying the stay. Our affirmance of the orders on appeal and our Supreme Court's denial of the petition for certification confirm that the issues raised by defendant lacked merit. In the absence of a stay, the judge had continuing jurisdiction to enforce the orders being appealed.

Turning to the substantive arguments raised in this appeal, due to "the family courts' special jurisdiction and expertise in family matters," the "scope of appellate review of a trial court's fact-finding function is limited.  The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 411-13 (1998) (citing Rova Farms Resort, Inc. v. Inv's Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

While we owe no special deference to the judge's legal conclusions, Manalapan, 140 N.J. at 378, "'the factual findings and legal conclusions of the trial judge'" should be left undisturbed unless we are "'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion."  Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412).  Thus, we will only reverse the trial court's decision when it is necessary to "'ensure that there is not a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'"  Id. at 48 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Likewise, counsel fee determinations rest within the trial judge's sound discretion. Williams v. Williams, 59 N.J. 229, 233 (1971). We will disturb a trial court's determination on counsel fees "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Applying these principles, we are satisfied that Judge Kramer's decision is amply supported by the record and legally sound. Defendant's arguments to the contrary lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4295-19